**Gay Lynn CHANDLER, et al.,**
**Plaintiffs/Appellants,**

v.

**CITY OF INDEPENDENCE,**
**Defendant/Respondent.**

**No. WD 32788.**

Missouri Court of Appeals,
Western District.

Aug. 31, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Oct. 5, 1982.

Application to Transfer Denied Nov. 15, 1982.

Michael W. Manners, Robert J. Graeff, Daniel R. Brown, Independence, Jerold L. Drake, Grant City, for plaintiffs/appellants.

George K. Kapke, Independence, for defendant/respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

The widow and minor children of Jerold Chandler brought this action against the City of Independence for the wrongful death of Jerold. The jury returned a verdict in favor of the City and the court entered judgment thereon.

Chandler contends the court erred in giving the contributory negligence instruction and declaring an ordinance unconstitutional. Affirmed.

Jerold Chandler lived at 823 South Haden in Independence, with his wife, Lydia. His children were by a former marriage. The house rented by Chandler was on the northeast corner of the intersection of Sea and Haden Streets. On the south side of Chandler's house and running parallel to Sea Street were several electrical wires suspended on poles. The wires were a part of the system by which the City of Independence supplies electrical current to its customers. Included in the wires running south of the Chandler house were two lines carrying 7,620 volts each. The Chandler house was about 10 feet 10 inches from the closest of these lines.

In the early evening of October 21, 1977, Chandler and his wife went to the south yard of their home where Chandler began assembling a CB antenna which he was planning to give to a friend. It was still light when Chandler had assembled the antenna to its full length of 21 feet one and one-half inches. After he had it assembled and was facing to the east so that he was parallel with the electric lines, Chandler lifted the upright antenna several inches from the ground to inspect the base. He returned the antenna to the ground, whereupon Lydia returned to the house. She paused at the screen door and saw her husband again raise the antenna upright to about waist height. Both times when Chandler lifted the antenna from the ground, he was standing about 2 feet from the house and about 8 feet 10 inches from the nearest high voltage wire. As Lydia saw her husband holding the antenna at about waist height, a gust of wind blew the antenna across the driveway at an angle toward the power lines. Lydia saw a flash of light and then her husband was thrown against the side of the house. Jerold was taken to a hospital where he was pronounced dead. The cause of death was listed as electrocution resulting from contact of the antenna with the power lines.

Chandler submitted the case on the theory that the City failed to isolate its electrical wires so as to provide adequate clearance from the Chandler driveway. The City submitted contributory negligence.

■ Chandler contends the City's contributory negligence instruction [1] was erroneous because it did not require the jury to find that Chandler had knowledge and appreciation of the danger of injury from the electrical lines. Chandler relies on cases such as *Koirtyohann v. Washington Plumbing and Heating Company,* 471 S.W.2d 217 (Mo.1971), and *Davidson v. International Shoe Company,* 427 S.W.2d 421, 424–425[4, 5] (Mo.1968). These cases hold that when there is no evidence showing that an injured party had knowledge, either actual or constructive, of the danger presented by his conduct, the failure of a contributory negligence instruction to require a finding of knowledge and appreciation of the danger will constitute prejudicial error. Those cases represent instances in which a person could see the general condition, but still not be alerted to a particular danger arising from the observable condition. Thus in *Davidson,* the plaintiff placed his foot on a step which tilted and caused him injury. From observing the step the plaintiff was not aware that the step would tilt when he stepped on it. For that reason, the contributory negligence instruction was required to contain a finding of knowledge and appreciation of the danger on the part of the plaintiff.

There is no dispute that the electrical lines running some 10 feet from the Chandler home were open and visible. Lydia testified that she knew the lines were there and also knew of the danger associated with the wires. In *Hamilton v. Laclede Electric Cooperative,* 294 S.W.2d 11, 17[5, 6] (Mo. 1956), the court held that persons of ordinary intelligence are presumed to know the dangers attending contact with wires electrically charged.

The distinction between this case and *Koirtyohann* and *Davidson* was clearly stated in *Peck v. Olian,* 615 S.W.2d 663, 667[5] (Mo.App.1981):

"The distinction drawn by these cases indicates that if, as in *Davidson* and *Koirtyohann,* the plaintiff could look and see the general condition but still not be alerted to the danger from which the injury arose, the contributory negligence instruction requires a finding of knowledge and appreciation of danger. If on the other hand, as in [*Fehlbaum v. Newhouse Broadcasting Corporation,* 483 S.W.2d 664 (Mo.App.1972)], the plaintiff could look and see the general conditions and be alerted to the danger from which the injury arose, knowledge and appreciation of the danger is not a required element of the instruction."

Here it is conceded that Chandler knew of the location of the electrical wires and he was shown to be a person of ordinary intelligence. Under those conditions he is presumed to understand and appreciate the dangers attendant to contact with the wires. Chandler was shown to be experienced with CB equipment and antennas. As explained in *Peck,* Chandler was alerted to the danger from which his death arose by his knowledge of the presence of the lines and of the danger involved if the antenna made contact with them. All of the dangers which caused the injury were fully revealed to Chandler; the existence of the lines, the proximity of the lines to the place where he was standing, the length of the antenna, and the danger posed if the antenna made contact with the electrical lines.

It is true that there is no evidence as to the wind blowing prior to the gust which blew the antenna into the line, but the City was not required to prove that Chandler foresaw that a gust of wind would occur at the moment it did. The rule is stated in *Gaines v. Property Servicing Company,* 276 S.W.2d 169, 174[6–8] (Mo.1955) that it is:

"unnecessary that the party charged should have anticipated the very injury complained of or anticipated that it would have happened in the exact manner that it did."

1. "Your verdict must be for defendant if you believe: First, either: decedent failed to keep a careful lookout, or decedent permitted the antenna to come into contact with the electric line, and Second, decedent, in any one or more of the respects submitted in Paragraph First, was thereby negligent, and Third, such negligence of decedent directly caused or directly contributed to cause the death of decedent." MAI 32.01(3)

There is no doubt Chandler was aware of the factors mentioned above. There was nothing hidden or unknown that suddenly caused the injury, unless it could be said to be the wind. However, the City did not have to prove that Chandler anticipated the wind blowing the antenna into the line. It is sufficient that Chandler knew that he was well within range of the power lines while holding a 21 foot antenna. He also knew that while holding an antenna of that height, it was possible that the antenna might fall into the line if the antenna slipped out of his hands, if he tripped while holding it, or if a gust of wind came along. It was not the City's burden to show that Chandler anticipated the precise cause of the antenna falling into the line, but only that while holding a 21 foot antenna upright within 8–9 feet of high voltage lines, there was a danger of injury or death. He fully understood and appreciated, or should have, the danger involved in his activity with an antenna of that size in the place he chose to assemble and inspect it.

This knowledge and appreciation of danger is the only element Chandler claims the instruction lacked. Under *Peck* and *Gaines,* Chandler was alerted to the danger by the general condition existing of which he was aware. For that reason the instruction was not required to contain any reference to knowledge and appreciation of danger.[2]

Chandler also contends the court erred in sua sponte declaring an ordinance of the City unconstitutional. This ordinance required those who supply electricity to consumers to comply with the safety rules for the installation and maintenance of electrical supply lines as fixed by the National Electrical Safety Code and promulgated by the National Bureau of Standards. Chandler contends that prejudice resulted because by excluding this ordinance from evidence, the court precluded the giving of a negligence per se instruction on a finding that the lines were closer to the ground than required by the safety code.

■ Chandler produced evidence that all companies supplying electricity follow the provisions of the National Electrical Safety Code, which requires lines of this type and location to be twenty feet above ground at their lowest point. There was evidence that the line in question had excessive sag so that its lowest point was less than twenty feet above ground. This evidence of custom and usage was sufficient to support an instruction on negligence per se in maintaining this line at less than the customary height. Custom and usage will support a negligence per se instruction just as evidence of an ordinance or statute violation will support such an instruction. *Swigart v. Lusk,* 196 Mo.App. 471, 192 S.W. 138, 140[2–4] (1917); *Gas Service Co. v. Helmers,* 179 F.2d 101, 104[5] (8th Cir.1950). Thus, the refusal to admit the ordinance did not foreclose the giving of a negligence per se instruction.

■ The difficulty with Chandler's contention is that no negligence per se instruction was offered. When Chandler failed to offer an instruction on negligence per se, the issue was deemed abandoned. *State ex rel. State Highway Commission v. City of Washington,* 533 S.W.2d 555, 559[3] (Mo. 1976), *Henderson v. Yust,* 560 S.W.2d 269, 271[3] (Mo.App.1977). Since Chandler abandoned the issue of negligence per se by failing to request an instruction on that theory, no prejudice would result from excluding the ordinance when other evidence would support such an instruction.

The judgment is affirmed.

All concur.

---

2. Chandler also relies on *Thompson v. City of Lamar,* 322 Mo. 514, 17 S.W.2d 960 (1929). That case involved a question of contributory negligence as a matter of law and did not concern a question of instruction. However, the court did point out, as the court did later in Hamilton, that a person of "mature years" and "average intelligence" will know and appreciate the danger of coming in contact with electrical wires. Chandler also relies on certain language in *Dorrin v. Union Electric Co.* 581 S.W.2d 852, 858 (Mo.App.1979), but the court there was concerned with contributory negligence on the part of a minor. The court pointed out at page 853[3, 4] the difference in the standard of judging contributory negligence between a minor and an adult.