# LEWIS STATE BANK v. PARSONS
## Case No: 83-3455
Second Judicial Circuit, Leon County

March 2, 1984

## APPEARANCES OF COUNSEL

**Gregory D. Smith** for plaintiff.

**Robert Cintron** for defendant.

## OPINION OF THE COURT

MIKE CARTER, County Judge.

### *FINAL JUDGMENT*

The plaintiff appeared being represented by Mrs. Lucy Tacot, Vice-President of the Lewis State Bank in charge of operations and an employee of the Bank for 29 years, with their counsel, Attorney Gregory D. Smith and their expert witness in regard to reasonable attorney fees, Attorney Cynthia Tunnicliff, who has been a member of the Bar for 12 years, together with the defendant, Mr. John Parsons, who is a physics major at Florida State University, and his attorney, Robert Cintron. The Court received testimony from the parties and the witnesses, received numerous exhibits and, after the trial, received memorandums of law in regard to the issue of awarding attorney fees. The plaintiff admits liability in regard to the basic claim of $136.00

plus costs of $26.55, so the real issue concerns attorney fees which hinges on whether the Federal Electronic Fund Transfer Act applies. This Act limits liability to the consumer for "unauthorized" transfers. The Bank cannot exceed these limits by contracts with customers calling for payment of attorney fees, court costs, etc. which exceed the Act's liability limitations. This Act forms the basis of new law on automatic tellers.

## FACTS

The facts of the case are interesting. Mr. Parsons is a Kung Fu enthusiast. His martial arts instructor, Mr. Charles Green, hypnotized him in May of 1983, approximately one month prior to the theft of $336.00 from Mr. Parsons' MAX card customer transaction account. Mr. Parsons testified that while under hypnosis, Mr. Charles Green elicited his personal identification number (PIN) and this statement is further confirmed in the plaintiff's Exhibit No. 2, an affidavit signed by Mr. Parsons.

On Thursday, June 1, 1983, Mr. Parsons discovered that his wallet was missing. Mr. Charles Green is a frequent visitor at Mr. Parsons' abode and was there on or about the time Mr. Parsons' wallet went missing. In the wallet was Mr. Parsons' plastic MAX card and a $100.00 personal check from his parents made payable to him. On that day, Mr. Parsons had a $226.69 balance in his MAX card account.

On Friday, June 2, 1983, $200.00 cash was withdrawn from Mr. Parsons' MAX card account at the Lake Bradford Road remote facility. Mr. Parsons testified that he did not make the withdrawal, nor did he know who did. No withdrawal can be made without both the PIN and the MAX card. The $200.00 cash withdrawal reduced the account balance to $22.69. On the same day, a personal check for $11.00 drawn on the account of Mr. Parsons cleared the bank, thereby reducing the account balance to $11.69. Later that afternoon, after the Bank's business day had changed to June 3rd, the $100.00 personal check written to Mr. Parsons by his parents, which had been stolen with the wallet, was deposited to the MAX card account. Simultaneously, $110.00 cash was withdrawn from the MAX card account, leaving a balance of $1.69. Mr. Parsons testified that he did not make the $100.00 deposit nor the $200.00 withdrawal nor does he know who did.

On the afternoon of Friday, June 3rd, the day after the transactions took place, Mr. Parsons notified the Bank that his MAX card and wallet was lost or stolen, and reported the theft to the Tallahassee Police Department. The Bank in turn advised Mr. Parsons that over

20

$300.00 cash had been withdrawn from the MAX card account since June 2, 1984.

Mr. Parsons testified that he had not benefited in any manner from the transactions nor had he voluntarily given to a third party both of the essential means of access to his MAX card account, that is both his PIN and his MAX card.

## LAW

The parties agree that the MAX card account transactions at issue in this cause are governed by the Federal Electronic Fund Transfer Act, 15 U.S.C. s.1693, et. seq. (the "Act") and the Regulations enacted by the Federal Reserve Board to carry out the purpose of the Act, 12 C.F.R. 205, et seq., but differ over whether the ACT excludes the transfer in this case. In essence, if the transfers were authorized then the Act does not apply and Mr. Parsons is liable for attorney fees or vice versa. The Court has been provided copies of relevant portions of the Act and the Regulations.

The Bank insists that Mr. Parsons "authorized" the electronic fund transfers at issue in this cause by disclosing his personal identification number (PIN) to his martial arts instructor. Therefore, the Bank concludes, Mr. Parsons is fully liable to the Bank for any loss it incurred, including attorney fees. The Bank bases its argument on the definition of the phrase "unauthorized electronic fund transfer" found at s.1693a(11) of the Act.

What is an unauthorized electronic fund transfer? Section 1693a(11) of the Act lists three elements; namely,

1. an electronic fund transfer initiated by someone other than the account holder,

2. which person does not have "actual authority" from the account holder to initiate such fund transfer,

3. and the account holder must have received no "benefit" from the fund transfer.

Section 1693a(11) specifies three situations under which an electronic fund transfer is deemed "authorized" as opposed to unauthorized, among which is a transfer "which person was furnished with the 'card, code, or other means of access' to the account by the account holder." The Bank claims that the transactions at issue were authorized by Mr. Parsons because Mr. Charles Green was furnished with the "card, code or other means of access" to the MAX card account of Mr. Parsons.

Contrary, Mr. Parsons testified that he did not give anyone "actual

authority" to make the transfer at issue, since he only gave the PIN to his Kung Fu instructor, Mr. Charles Green, while under hypnosis and further, he did not give his martial arts instructor his MAX card.

Mr. Parsons relies on the case of *Ognibene v. Citibank, N.A.,* 466 N.Y.S. 2d 845, 112 Misc. 2d 219 (1981), which is a New York Small Claims Court case which refused to give the type of strict construction to the Act as the bank seeks in this action. In *Ognibene,* the account holder was flim-flammed into giving her electronic fund account card to a third party who then used the card to withdraw money from the account. The bank sought to hold the customer liable for all money withdrawn from the account on the theory that the customer had "authorized" the transaction by voluntarily giving her card to the third party. The Court disagreed with the bank. Despite the literal definition of "unauthorized electronic fund transfer" contained in the Act, the Court held the consumer had not authorized the tranfer. Because the account holder had not authorized the transfer and had not benefited from such transfer, the Court concluded that the transfer was "unauthorized". Since the transfer was "unauthorized", the Court held that s.1693g limited liability provisions of the Act applied. The Court reached this result despite the provisions of s.1693a(11)(A) which states that the relinquishment of the PIN or card is sufficient to render the transfer "authorized".

In *Ognibene,* page 848, the Court stated:

There is no evidence that he deliberately or even negligently did so. On the contrary, the unauthorized person was able to obtain the code because of the defendant's own negligence.

Was Mr. Parsons negligent in not requesting a new PIN after he was placed under hypnosis and gave his PIN to his Kung Fu instructor one month prior to the theft? I think this distinguishes *Ognibene* from our factual case at bar.

Having decided that the fund transfers at issue were authorized the Act does not apply to limit liability and thus the Bank may recover their full loss plus attorney fees. On the face of Mr. Parsons' signature card to his MAX card account, which bears his signature, Mr. Parsons agrees to be liable for ". . . sums due Bank together with costs of collection, including attorney's fees." Additionally, the Bank's customer transaction account agreement which is incorporated by reference on the signature card provides:

Customer also shall be liable to Bank for all expenses, including attorney's fees and costs of collection incurred by Bank, because of

22

. . . any litigation concerning any item cashed, deposited, or paid on the account in which Bank is successful; . . .

It is well settled law that a party who seeks to recover attorney fees from another as the result of costs of litigation may do so when authorized by contract.

The Court now finds that Mr. Parsons authorized the transactions in question since he voluntarily went under hypnosis to his Kung Fu instructor, Mr. Green and disclosed his PIN (the "code"), and neglected to inform the Bank that he had disclosed his PIN code and request a different PIN and therefore, the Electronic Fund Transfer Act does not apply, since it only pertains to unauthorized transfers, it is;

ORDERED AND ADJUDGED that the Court now enters judgment in favor of the Bank for $136.00 plus costs of $26.55, plus reasonable attorney fees of $500.00 for a total of $662.53 for which let execution issue.