Michael S. GAFFNEY and Marilyn A. Gaffney, Plaintiffs-Respondents,

v.

COMMUNITY FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant-Appellant.

No. 49691.

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 25, 1986.

Robert C. Jones, Clayton, for defendant-appellant.

Thomas P. Howe, Clayton, for plaintiffs-respondents.

KELLY, Judge.

Defendant, Community Federal Savings and Loan Association, appeals from an adverse judgment in the St. Louis County Circuit Court awarding plaintiffs, Michael and Marilyn Gaffney, $2,600 plus interest for actual damages, and $10,000 for punitive damages in an action by plaintiffs against defendant for unauthorized withdrawals and the subsequent failure to recredit funds to plaintiffs' savings account. We affirm in part and reverse in part.

Defendant contends on appeal (1) plaintiffs' petition failed to state a cause of action upon which relief may be granted; (2) plaintiffs did not make a submissible case therefore a verdict should have been directed for defendant at the end of plaintiffs' case; (3) plaintiffs did not make a submissible case for punitive damages, therefore a verdict should have been directed for defendant on the issue of punitive damages and the issue should not have been submitted to the jury; (4) the trial court erred in failing to grant a mistrial after it sustained defendant's objections to plaintiffs' counsel's closing arguments; (5) the trial court erred in giving Instruction Numbers 5, 7, and 9 in that said instructions were improperly submitted under the law, and were not supported by competent evidence.

We view the facts in the light most favorable to the judgment *See Commerce Bank of Festus v. Bradshaw*, 699 S.W.2d 119 (Mo.App.1985).

In November, 1978 plaintiffs opened a trust account at Community Federal Savings and Loan Association. Plaintiffs were designated as trustees on the account for Marilyn Gaffney's mother. Plaintiffs were issued pass cards and PIN [1] numbers pursuant to a request form signed by Marilyn Gaffney. The pass card and PIN number are used to withdraw money from an automated teller machine, [2] or from Schnucks stores.

Michael Gaffney testified he destroyed his pass card and PIN number the day he received the card, and before ever using them. Marilyn Gaffney testified she put her pass card in her wallet and her PIN number in the drawer of the nightstand in the couple's bedroom. She also testified that she had never used her pass card or PIN number to withdraw money from an automated teller machine or from Schnucks stores.

Prior to April 4, 1980 there had been a total of eight withdrawals from plaintiffs' account since they opened it in November of 1978. However, between April 5, 1980 and April 13, 1980, thirteen withdrawals were made each in the amount of $200. These withdrawals were either made from an "ugly teller" or from various Schnucks stores.

Plaintiffs received a statement from defendant on May 9, 1980 reflecting the thirteen withdrawals. Marilyn Gaffney, upon receiving the statement, checked her purse to verify that her pass card was still in her wallet. She also checked her nightstand drawer to make sure her PIN number was not missing. Both items were in the correct places. After being informed of the discrepancy in the bank statement by Marilyn Gaffney, Michael Gaffney immediately notified defendant by telephone of the thirteen unauthorized withdrawals. The next day on May 10, 1980 plaintiffs went to a branch of defendant's bank to discuss the problem with its representatives.

In response to their inquiry, plaintiffs were informed that defendant had ten business days to investigate the situation; that if at the end of this period it was found

---

1. PIN is the acronym for Personal Identification Number.

2. Referred to as an "ugly teller" by Community Federal Savings and Loan Association.

that unauthorized withdrawals were made, or a further period of investigation was needed to resolve the situation, the money would be re-credited to plaintiffs' account.

On May 22, 1980 defendant upon completion of its investigation, informed plaintiffs by way of a letter and orally that they found no unauthorized transactions were made against plaintiffs' account, therefore the account would not be re-credited.

Plaintiffs filed this lawsuit against defendant on April 20, 1982 arising out of the thirteen withdrawals from their account totalling $2,600. Jury trial was had on October 17 and 18, 1984 in the St. Louis County Circuit Court. At the close of plaintiffs' case defendant moved for a directed verdict. The motion was overruled. When this motion was denied defendant stood on its motion and offered no evidence. The case was submitted to the jury, which found in favor of plaintiffs, awarding them $2,600 plus interest in actual damages and $10,000 in punitive damages. It is from this judgment that defendant appeals.

Defendant contends in its first point on appeal that plaintiffs' petition failed to state a cause of action for which relief could be granted in that it pled that the defendant converted $2,600 from plaintiffs' account and there is no cause of action for conversion of money or debts.

■ We agree with defendant that as a general rule a claim for money may not be in conversion because conversion lies only for a specific chattel which has been wrongfully converted. *See Knight v. M.H. Siegfried Real Estate, Inc.*, 647 S.W.2d 811, 816–817 (Mo.App.1982); *Western Casualty & Surety Company v. First State Bank*, 390 S.W.2d 913, 922[19] (Mo.App. 1965). However, we disagree with defendant that the mere use of the words "took and converted" by plaintiffs in their petition defeats their cause of action.

■ In *Western Casualty, supra,* this court held that the plaintiffs' erroneous characterization of an action against a bank for misapplied funds in a trust by the ill-chosen use of the word "converted" did not defeat his cause of action because he had pled the essential facts necessary to state a basis for relief. *Western Casualty & Surety Company v. First State Bank, supra* at 922. As in *Western Casualty* plaintiffs' poor choice of words is not sufficient to defeat their cause of action.

■ Rule 55.33(b) allows for the presentation of issues at trial which were not specifically raised in the pleadings: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings ..." In other words, "[t]he theory of a case is framed by the pleadings either as drawn or *as amended by the evidence."* *Sydney v. Coca Cola Company*, 569 S.W.2d 11, 12[3] (Mo.App.1978). (emphasis added)

■ Plaintiffs' petition, although it asserts that defendant "converted" plaintiffs' money, is not defective because the evidence presented at trial amends it into an appropriate cause of action. Rule 55.33. The evidence indicates there was an unauthorized withdrawal from plaintiffs' account, and a subsequent failure by defendant to re-credit plaintiffs' account. Plaintiffs have grounds for relief based on these theories.

There are no Missouri cases or statutes dealing directly with the issues surrounding unauthorized transfers of funds by the use of an automated teller machine. Automated teller machines are a new device used by the banking industry, consequently the legal issues stemming from their use have not been fully litigated or resolved. There is a federal statute which governs automated teller machine transactions. The Electronic Fund Transfer Act, 15 U.S.C. Section 1693 et seq. sets out guidelines as well as the liabilities of the banks and the customer concerning the use of the automated teller machine. However, this statute is not controlling in this case as plaintiffs did not bring this action under the statute. Nevertheless it is a helpful guide in resolving the issues in this case

since the issues revolve around transactions involving the use of automated teller machines. The federal statute provides for the re-crediting of a customers account when it is found that an unauthorized electronic fund transfer[3] or an incorrect electronic fund transfer involving their account has occurred. 15 U.S.C. Section 1693f. Therefore there is precedent in other jurisdictions for the existence of causes of action and recovery for improper electronic fund transfer transactions. See *Ognibene v. Citibank, N.A.,* 112 Misc.2d 219, 446 N.Y.S.2d 845 (N.Y. City Civ.Ct.1981). In *Ognibene* the New York Court adopted the 15 U.S.C. Section 1693 et seq. as the governing body of law regarding automated teller machine transactions as New York had not passed any legislation governing this area. *Ognibene v. Citibank, N.A.,* 446 N.Y.S.2d at 847. However, since we cannot rely on this statute as a cause of action as formed by the evidence in this case we must consider other bases for relief.

■ The relationship between a bank and a depositor is one of debtor and creditor grounded in contract; and the bank's contractual duty to charge a depositor's account *only* on the depositor's authentic order is absolute. *See, American Sash & Door Co. v. Commerce Trust Co.,* 332 Mo. 98, 56 S.W.2d 1034, 1038[5, 6] (1932); *Matter of the Estate of Parker,* 536 S.W.2d 25, 29[4] (Mo. banc 1976). (emphasis added)

Evidence was adduced at trial through the testimony of the plaintiffs that neither of them had ever used their pass cards or PIN numbers to make withdrawals. Ergo they had never authorized the bank to charge their account by this method of electronic fund transfer. There was also evidence presented which indicated that defendant's investigation revealed no unauthorized withdrawals from plaintiffs' account. Although this appears to be conflicting evidence it is not the province of this court to judge the credibility of the

witnesses, or to resolve conflicts in testimony. We must leave these tasks to the jury and review the evidence in the light most favorable to its verdict. *Fowler v. Daniel,* 622 S.W.2d 232, 236[8, 9] (Mo.App.1981). Viewed in this light there was sufficient evidence to bring a cause of action based in contract, as a result of the contractual relationship between the parties. Plaintiffs' petition was sufficiently amended by the evidence to provide for this appropriate cause of action, and their use of the word "converted" does not defeat their claim.

■ Defendant asserts in its second point that a verdict should have been directed for defendant at the end of plaintiffs' case in that plaintiffs did not make a submissible case because they presented no evidence that defendant took the money from their account. Our findings regarding defendant's first point are dispositive of the second point. The second point is premised on the presumption that the cause of action is conversion and that plaintiff did not prove the elements necessary thereto. Thus this claim is meritless. Pursuant to our findings above, the actual cause of action lies in contract. "Sustaining a motion for a directed verdict is a drastic action and should only be done when all the plaintiffs' evidence and reasonable inferences which may be drawn therefrom are so strongly against the plaintiff that reasonable minds cannot differ." *Duke v. Gulf Western Mfg. Co.,* 660 S.W.2d 404, 409[2] (Mo.App.1983). We do not find that the evidence in this case meets this strict test. Viewed in the light most favorable to the plaintiff there was sufficient evidence so that the trier of fact could determine that defendant had breached its contractual duty. Therefore it was not improper to deny defendant's motion for a directed verdict; and there was sufficient evidence to properly submit this case to the jury.

---

**3.** An unauthorized electronic fund transfer as referred to in 15 U.S.C. Section 1693a(11) is "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit, ...."

Defendant contends in his third point on appeal that a verdict should have been directed for defendant on the issue of punitive damages in that no evidence was submitted that defendant acted intentionally, without justification and with the knowledge such action was wrongful.

We agree that the jury's verdict as to the punitive damages was improper. Malice is the basis for awarding punitive damages and is to be determined by applying the test of whether the defendant did a wrongful act intentionally without just cause or excuse. Concomitantly, "defendant must not only have intended to perform the act which is ascertained to be wrongful but must have known it was wrongful when he did it." *Stark v. American Bakeries Co.,* 647 S.W.2d 119, 123[6, 7] (Mo. banc 1983). However, if the defendant acted in good faith on the honest belief his act was lawful, he is not liable for punitive damages, even though he may have been mistaken as to the legality of his act. *Moon v. Tower Grove Bank & Trust Co.,* 691 S.W.2d 399, 401 (Mo.App.1985). The evidence in this case does not meet the criteria set forth above. The record reflects that defendant charged plaintiffs' account with the belief that the withdrawals had been duly authorized. Furthermore it did not re-credit plaintiffs' account because its investigation uncovered no unauthorized transactions involving plaintiffs' account.

The jury found that there was sufficient evidence to prove plaintiffs' claim that there had been thirteen unauthorized withdrawals amounting to $2,600. We agree plaintiffs made their case on this claim. However we find insufficient evidence to support the award of $10,000 in punitive damages. There was nothing in the record to indicate that defendant knew its charging of the account was wrongful when it performed this act nor was there evidence to conclude defendant unjustifiably failed to re-credit the account. It was later determined that defendant's actions regarding plaintiffs' account were wrongful but at the time defendant acted it did so with the belief its actions were lawful. *Moon v.*

*Tower Grove Bank & Trust Co., supra.* Therefore we find no malice, and conclude that the award of punitive damages was error.

Defendant's fourth point asserts the trial court erred in failing to grant a mistrial after sustaining its objections to the closing argument of plaintiffs' counsel. We find no merit in this point. The trial court possesses broad discretion in the area of closing arguments, and its decisions regarding such matters are not lightly to be disturbed on appeal. *Lewis v. Bucyrus-Erie, Inc.,* 622 S.W.2d 920, 925[6] (Mo. banc 1981). Consequently, we as an appellate court defer to the judgment of the trial court concerning the propriety or impropriety of closing arguments in that it is in a better position to determine what effect if any the closing argument has upon the case. *Daniels v. Brown,* 266 S.W.2d 680, 688[11] (Mo.1954); *Conlon v. Roeder,* 418 S.W.2d 152, 162[17] (Mo.1967).

Defendant first objects to the references made by plaintiffs' counsel to the failure of defendant to call F.B.I. agents to the stand because those agents were equally available as witnesses to both sides. It is improper to raise negative inferences in an argument from a party's failure to produce a witness who is equally available to both parties, and the overruling by a trial judge of an objection to such an argument is prejudicial error. *Hill v. Boles,* 583 S.W.2d 141, 145[1] (Mo. banc 1979). However, in the present case the trial judge struck from the record that part of plaintiffs' counsel's argument which referred to the failure to call the F.B.I. agents to the stand. In view of the broad discretion held by the trial court, its superior position in assessing the impropriety of the argument, and the fact the trial court did not overrule defendant's objection we defer to its judgment and find no abuse of discretion.

Defendant's second objection to plaintiffs' closing argument was the refer-

ence to the Gaffneys as "poor people" and then as "little people," because these characterizations resulted in passion and prejudice against defendant. Again we defer to the broad discretion of the trial court and its greater ability to judge the effect of the plaintiffs' counsel's argument; and we find no abuse of its discretion in failing to sustain objections to the characterization of plaintiffs as "poor" or "little" people and its refusal to declare a mistrial as a result of these remarks. Therefore we deny defendant's point.

Defendant's fifth point on appeal concerns the propriety of the verdict director. Instruction Number 7 to which defendant objects and which served as the verdict director in this case set forth the following criteria for a verdict in favor of plaintiffs:

Your verdict must be for plaintiffs if you believe:

First, that defendant made unauthorized withdrawals from plaintiffs' savings account; and

Second, that plaintiffs notified defendant that such withdrawals were unauthorized and made demand for return of the sums withdrawn without authorization; and

Third, that defendant refused to return such sums; and

Fourth, in so doing, defendant acted willfully and without just cause or excuse; and

Fifth, plaintiffs were thereby damaged.

Defendant asserts that this instruction was not supported by competent evidence, that paragraph four was an attempt to mix a verdict director for actual damages and a punitive damage instruction, that paragraph four incorrectly paraphrased MAI–16.01, and that paragraph four led to improper speculation on the part of the jury. We agree with defendant that the fourth paragraph was incorrectly included in the verdict director. This paragraph is paraphrasing the requirements

necessary for malice which is the basis for the award of punitive damages, (MAI–16.-01), and is not an essential element to the finding that defendant made unauthorized withdrawals from plaintiffs' account and subsequently refused to re-credit the account. Inclusion of the fourth paragraph required the jury to find an additional unnecessary element in order to arrive at a judgment in favor of plaintiffs.

Reversal by this court of the judgment rendered in the lower court due to inappropriate jury instructions will only occur when the defects in the instructions are of such a nature that there is substantial potential for a prejudicial effect. *Fowler v. Park Corporation,* 673 S.W.2d 749, 756[9] (Mo. banc 1984).

Giving an erroneous instruction is not grounds for reversal when it is manifest from the undisputed facts in the case that the instruction could not have prejudiced the party appealing. *Stone v. Garrett Construction Co.,* 92 S.W.2d 951, 954[2] (Mo.App.1936). *See also Young v. New York and St. Louis Railway Company,* 291 S.W.2d 64, 67[3] (Mo.1956).

"The prejudicial effect of an erroneous instruction must be judicially determined [Rule 70.02(c), V.A.M.R.], and in making such a determination, the test is whether the challenged instruction placed a greater burden on the party submitting it than would the applicable instruction." *Keifer v. St. Jude's Children's Research Hospital,* 654 S.W.2d 236, 238[5] (Mo.App. 1983). When the burden of proof is greater than necessary as a result of an erroneous instruction, and a verdict is still reached in favor of the party bearing that burden the error is harmless. *Keifer supra* at 238. Instruction 7 as written required the jury to find an additional unnecessary element in order to reach a verdict in favor of plaintiff. We must assume that the jury found all the *essential* elements enumerated in the jury instruction. There-

fore with or without the non-essential fourth paragraph there was grounds for relief in favor of the plaintiff. If any prejudice existed it is to the plaintiffs not the defendant. We find the instructional error relating to Instruction 7 harmless. See *Stone v. Garrett Construction Company*, supra at 954–955.

Defendant's last two points on appeal concern alleged errors relating to the instruction defining the term malice (MAI 16.01) and the punitive damage instruction given in this case.[4]

As a result of the earlier points presented concerning punitive damages whereby we found that there was insufficient evidence to support an award of punitive damages based on any degree of malice, we need not reach the merits of these two points. Any error found in these instructions would have no effect on the ultimate outcome of our decision.

The judgment is affirmed as to the $2,600 plus interest in actual damages but reversed as to the $10,000 in punitive damages.

CRANDALL, P.J., and PUDLOWSKI, J., concur.

---

[4] The two instructions objected to by defendant in its final two points were:

The terms "malice" and "maliciously" as used in these instructions does not mean hatred, spite or ill will, as commonly understood, but means the doing of a wrongful act intentionally without just cause or excuse.
    and
If you find the issues in favor of plaintiffs, and if you believe the conduct of defendant as submitted in Instruction Number 7 was willful, wanton or malicious, then in addition to any damages to which you find plaintiffs entitled under Instruction Number 8, you may award plaintiffs an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter it and others from like conduct.