Ben Ellis LEAR and Linda J. Lear,
Appellants/Cross–Respondents,

v.

NORFOLK AND WESTERN RAILWAY
COMPANY, et al., Respondents/Cross–
Appellants.

No. WD 43876.

Missouri Court of Appeals,
Western District.

July 2, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 27, 1991.

Application to Transfer Denied
Oct. 16, 1991.

**14**

Cathleen Anne Shine, Harrisonville, for appellants/cross respondents.

Richard E. McLeod, Kansas City, for respondents/cross appellants.

Before LOWENSTEIN, P.J., and TURNAGE and FENNER, JJ.

FENNER, Judge.

This action arises from the claims of Ben Lear and his wife, Linda Lear against Norfolk and Western Railway Company (Norfolk and Western) and Service Cartage Company (Service Cartage). Ben Lear alleged at trial that he was injured while inspecting a trailer belonging to Norfolk and Western. Linda Lear's claim was for loss of consortium.

Ben Lear was an employee of Contract Trailer Service, Inc. (Contract Trailer). Contract Trailer was a trailer repair business that had an arrangement with Norfolk and Western whereby Ben Lear was stationed at the Norfolk and Western Railroad yards in North Kansas City to bid jobs for trailer repair on trailers owned by Norfolk and Western.

Service Cartage moved trailers belonging to Norfolk and Western by use of tractors belonging to Service Cartage. The tractors were driven by Service Cartage employees.

On July 19, 1984, a driver for Service Cartage brought a damaged Norfolk and Western trailer to the driveway next to the railroad's office building to have the necessary paper work on the trailer filled out. Ron Nelson, an employee of Norfolk and Western, inspected the trailer observing that it had a hole in the roof. While the trailer was still parked next to the office, Ron Nelson asked Ben Lear to make a bid to repair the trailer.

When Ben Lear was asked to make a bid on the trailer, the tractor was still attached to it with the engine running while the paperwork was being completed. Ben Lear went out to the trailer and climbed on top to inspect the damage. While Ben Lear was on top of the trailer the Service Cartage driver came out of the office and began to drive away having been instructed by Ron Nelson on where the trailer should be parked. As the trailer began to move Ben Lear jumped from the top of the trailer to the office roof and was injured in the process.

APPEAL OF BEN AND LINDA LEAR

After trial by jury, Ben Lear was awarded $80,000 against Norfolk and Western, reduced by 70% contributory fault assessed against him. Service Cartage was found not to be at fault. Additionally, judgment was against Linda Lear on her claim for loss of consortium. Ben and Linda Lear appeal and Norfolk and Western cross-appeals.

In their first point on appeal, the Lears argue that the trial court erred in entering judgment against Linda Lear on her claim for loss of consortium since Ben Lear received judgment and it was undisputed that he was hospitalized for his injuries. The Lears argue that Linda Lear was entitled to judgment for at least nominal damages.

A cause of action for loss of consortium is separate and distinct from the party's spouse suffering personal injury. The spouse seeking compensation for loss of consortium must show that he or she suffered damages arising out of the other's injuries. *Anderson v. Mutert,* 619 S.W.2d 941, 945 (Mo.App.1981). It does not follow automatically from one spouse's injuries that the other spouse suffered loss of services. *Weisbach v. Vargas,* 656 S.W.2d 797, 802 (Mo.App.1983). A jury is free to believe all or none of the testimony of any witness. *Anderson v. Mutert,* 619 S.W.2d at 945–46. In passing upon oral evidence a jury may find against a party even on the party's own unimpeached and uncontradicted evidence. *Ferguson v. Boyd,* 448 S.W.2d 901, 903 (Mo.1970).

Linda Lear was not entitled to judgment on her claim for loss of consortium merely because Ben Lear was found to have been injured. Furthermore, a wife's claim for loss of services is derivative only and she may not recover any damages as a matter of law on a claim for loss of servic-

es if her husband has no valid claim for his personal injuries. *Burrow v. Moyer,* 519 S.W.2d 568, 572 (Mo.App.1975). Judgment was in favor of Service Cartage on Ben Lear's claim and therefore, for this additional reason Linda Lear was not entitled to judgment against Service Cartage.

Appellants' first point is denied.

In their second point, the Lears argue that the trial court erred in giving Instruction Number 9 because: 1) it contained prohibited judicial comment on the evidence; 2) it improperly submitted "positional" negligence; 3) it constituted a roving commission; 4) it failed to hypothesize danger; 5) it failed to identify its source; and 6) it assumed an essential fact.

Instruction Number 9 submitted the issue of Ben Lear's comparative fault. It was submitted by the defendants at trial based upon MAI 37.02 [1986 New] as modified by the defendants. Instruction Number 9 read as follows:

> In your verdict you must assess a percentage of fault to plaintiff Ben Lear if you believe:
> First, either
> Ben Lear failed to wait to inspect the trailer until it had been parked and the tractor removed, or
> Ben Lear failed to provide a warning to anyone who might operate the tractor/trailer rig that he was on top of the trailer, and
> Second, in any one or more of the respects submitted in paragraph First, Ben Lear was thereby negligent, and
> Third, such negligence directly caused or directly contributed to cause any damage which Ben Lear may have sustained.

■ Reversal of a judgment rendered at trial due to an inappropriate jury instruction is warranted only when the defects in the instruction are of such a nature that there is substantial potential for a prejudicial effect. *Gaffney v. Community Federal Savings and Loan Association,* 706 S.W.2d 530, 536 (Mo.App.1986). Giving an alleged erroneous instruction is not grounds for reversal when the facts show the instruction could not have prejudiced the party appealing. *Id.* The prejudicial effect of an erroneous instruction must be judicially determined. Rule 70.02(c). When the burden of proof is greater than necessary as a result of an erroneous instruction, and a verdict is nevertheless reached in favor of the party bearing that burden, the error is harmless. *Gaffney,* 706 S.W.2d at 536.

### Prohibited Judicial Comment

■ The appellants argue here that it was error for the court to instruct that a percentage of fault was to be assessed to Ben Lear if the jury found that "Ben Lear failed to wait to inspect the trailer until it had been parked and the tractor removed." Appellants argue that it was a conceded fact that Ben Lear commenced to inspect the trailer before the tractor was detached and that inclusion of this conceded fact in the instruction constituted a prohibited comment on the evidence.

■ In a negligence case, where there is evidence from which a jury could find that the plaintiff's conduct was a contributing cause of his damages, use of the instructions for comparative fault are appropriate. *Earll v. Consolidated Aluminum Corp.,* 714 S.W.2d 932, 937 (Mo.App.1986). Under the doctrine of comparative fault the jury has the responsibility of assessing the relative fault of the parties in tort actions. *Kramer v. Chase Resorts, Inc.,* 777 S.W.2d 647, 651 (Mo.App.1989).

■ Regardless of whether given conduct is conceded or not, the jury must still assess the relative fault of the parties considering their conduct. Furthermore, the plaintiff generally suffers no prejudice when the jury is required to find an issue that the plaintiff concedes. See e.g., *Young v. Kansas City Power & Light Co.,* 773 S.W.2d 120, 125 (Mo.App.1989); *Wadlow by Wadlow v. Lindner Homes, Inc.,* 722 S.W.2d 621, 630 (Mo.App.1986); *Reed v. Sale Memorial Hosp. & Clinic,* 698 S.W.2d 931, 939 (Mo.App.1985); and *Terry v. Sweeney,* 420 S.W.2d 368, 376 (Mo.App. 1967).

Appellants' claim of error for the submission of an allegedly conceded fact is denied.

### "Positional" Negligence

The appellants next argue that Instruction Number 9 was improper because it allowed the jury to find that the "mere position" of Ben Lear on top of the trailer was an act of negligence. Appellants once again reference the first paragraph of the first element of the instruction which directed a percentage of fault to be assessed if the jury believed "Ben Lear failed to wait to inspect the trailer until it had been parked and the tractor removed."

Appellants cite *Ballew v. Schlotzhauer*, 492 S.W.2d 774 (Mo.1973) in support of this argument. In *Ballew*, the plaintiff was dressed as Santa Claus, riding on the back of a flat bed truck in a parade. It was understood that the vehicle would be moving at very slow speeds in a closely controlled situation. The court held that under the evidence of the case it could not be said that reasonable people could conclude that the mere act of riding on the flat bed truck, without more, was negligent. *Id.* at 777.

Appellants' interpretation of the Instruction Number 9 in the case at bar is erroneous. The instruction did not allow the jury to find that Ben Lear's mere position on top of the trailer was negligence. As submitted by the paragraph of the instruction in question, Ben Lear's negligence was in being on top of the trailer before it was parked with the tractor removed. In other words, Ben Lear was negligent in light of the conditions existing at the time he climbed to the top of the truck. The conditions in the case at bar were thus distinguishable from those presented in *Ballew*.

Appellants' claim of error for submitting alleged "positional" negligence is denied.

### Conflict and Roving Commission

The appellants also claim here that the language in the second paragraph of the first element on Instruction Number 9 should have required a finding that Ben Lear failed to provide a warning to the particular driver of the truck rather than requiring a finding that he "failed to provide a warning to anyone who might operate" the truck. Appellant complains that the language used constituted a roving commission that conflicted with other instructions which specifically referenced defendant Service Cartage's driver.

An instruction on contributory negligence (now comparative fault) is too general and amounts to a roving commission when it fails to advise the jury what acts or omissions of the plaintiff found from the evidence, would constitute negligence. *Paisley v. Kansas City Public Service Co.*, 351 Mo. 468, 173 S.W.2d 33, 38 (1943).

Ben Lear admitted that he could have placed a ladder against the trailer, or moved his own truck in front of the tractor attached to the trailer he climbed on top of, and that such warnings would have insured against anyone moving the truck. The language used in the instruction conformed to the evidence and did not constitute a roving commission.

Appellants' claim of error for submitting a roving commission is denied.

### Failure to Hypothesize Danger

The next complaint appellants allege is that Instruction Number 9 failed to hypothesize the existence of a likely danger of injury as a condition precedent to any duty of Ben Lear to provide a warning that he was on top of the trailer.

Where a party is alerted to danger by general conditions of which he is aware, then an instruction is not required to contain any reference to the existence of a party's knowledge or appreciation of the danger. *Chandler v. City of Independence*, 640 S.W.2d 175, 177 (Mo.App.1982).

In the case at bar the evidence showed that Ben Lear knew the driver was in the office having paperwork processed. The truck was in the driveway with the engine running and Ben Lear's presence on top of the trailer could not be seen from the office. Ben Lear was alerted to the danger by the general conditions present. The instruction was not erroneous for failing to contain a reference to Ben Lear's knowledge or appreciation of the danger.

Appellants' argument that the instruction was erroneous for failure to hypothesize the existence of a likely danger of injury is denied.

### Failure to Identify Source

 Appellants further argue that Instruction Number 9 was incorrectly identified as "MAI 37.02 [1986 New] (modified)" when in reality it was MAI 17.02 [1980 Revision].

MAI 37.02 [1986 New] is the appropriate instruction to submit a plaintiff's comparative fault. MAI 37.02 directs that the initial phrase shall read as it did in Instruction Number 9 and that the remaining paragraphs are to be "similar to the essential elements of those types of verdict directing instructions formerly used to submit contributory negligence as a complete defense." The notes on use under MAI 37.02 [1986 New] direct the reader to Chapters 17 and 32 of MAI for other instructions on specifications of negligence which can be used in comparative fault instructions.

In the case at bar defendants submitted MAI 37.02 [1986 New] as modified by MAI 17.02 [1980 Revision]. Appellants have shown no prejudice by virtue of the defendants failure to show MAI 17.02 as the source of modification to MAI 37.02 [1986 New].

Appellants' argument that Instruction Number 9 was erroneous because it failed to identify MAI 17.02 [1980 Revision] as the source of modification is denied.

### Assumption of Essential Fact

 Finally, appellants argue that Instruction Number 9 was erroneous because it assumed that Ben Lear had the ability to give an effective warning when the driver of the truck began to drive away. The language of the instruction at issue here is as follows:

> Ben Lear failed to provide a warning to anyone who might operate the tractor/trailer rig that he was on top of the trailer....

The instruction does not make the assumption that appellants attribute to it. Appellants ignore the fact that Ben Lear was aware of the general conditions in existence which caused him to be in danger prior to the time the driver began to move the truck. Appellants also ignore the fact that Ben Lear could have taken action to warn the driver that the truck should not be moved before he climbed on top.

Appellants' argument that Instruction Number 9 was erroneous for assuming an essential fact is denied.

 In their third point, appellants argue that the trial court erred in entering judgment against Linda Lear on her claim for loss of consortium because the court used instructions not in MAI to submit her claim.

Linda Lear's claim was submitted under MAI 31.04 [1991 Revision] as the verdict director and MAI 37.08 [1991 New] as the damage instruction. These instructions were approved by order of the Missouri Supreme Court on September 11, 1990, effective July 1, 1991. The trial in this cause was in July of 1990.

At the time of trial there were no approved MAI instructions to submit the proper law on a claim for loss of consortium. *Johnson v. Hyster Co.*, 777 S.W.2d 281, 285 (Mo.App.1989). In its order approving MAI 31.04 [1991 Revision] and MAI 37.08 [1991 New] the Missouri Supreme Court directed that the instructions must be used on and after July 1, 1991, and may be used prior thereto without presumption of error. 793 S.W.2d LXVIII. Rule 70.02(c) provides the same. Furthermore, counsel for appellants advised the trial court that he had no objection to the use of the new instructions.

The use of MAI 31.04 [1991 Revision] and MAI 37.08 [1991 New] was not error. Appellants' third point is denied.

In their fourth point, appellants argue that MAI 31.04 [1991 Revision] and MAI 37.08 [1991 New] were improper submissions of the law because under these instructions she was required to cause the jury to believe that she was damaged. Ap-

pellants reassert that since Ben Lear received judgment and it was undisputed that he was hospitalized, Linda Lear was entitled to at least nominal damages.

This question was addressed under appellants' first point herein and needs no further discussion. Appellants' fourth point is denied.

In their final point, appellants argue that the trial court erred by denying them the opportunity to retaliate after Service Cartage injected its poverty as an issue in the case.

During voir dire, counsel for Service Cartage made the following inquiries:

COUNSEL FOR SERVICE CARTAGE: My client, Service Cartage, was a trucking company that handled intercity routes within the metropolitan area. I think Ms. Shine indicated to you they had offices down on Guinotte, 2001 Guinotte. They are not actively in business, although the corporate shell is maintained—

COUNSEL FOR BEN and LINDA LEAR: Objection, Your Honor, to the characterization as to the corporate shell.

COUNSEL FOR SERVICE CARTAGE: I'm trying to give them a little background.

THE COURT: Objection is overruled but I think you can explain their status.

COUNSEL FOR SERVICE CARTAGE: With that additional information—again, Mr. Richard Arnold is here today on behalf of Service Cartage. With that additional information, has anyone ever been an employee or had occasion to have business dealings of any kind with Service Cartage Company?

Appellants argue that the reference to Service Cartage as a corporate shell was tantamount to a plea of poverty. During closing argument, counsel for appellants attempted, but was prohibited by the court from assuring the jury that any judgment the jury entered against Service Cartage would be collected. Appellants represent that they should have been allowed to make this argument as retaliation for reference to Service Cartage as a shell corporation during voir dire.

The trial court is possessed of broad discretion in the area of closing argument and that discretion is not lightly disturbed on appeal. *Lewis v. Bucyrus–Erie, Inc.,* 622 S.W.2d 920, 925 (Mo. banc 1981). The trial court is in a better position to judge the prejudicial effect of statements at trial. *Gaffney v. Community Federal Savings and Loan Association,* 706 S.W.2d at 536.

The trial court did not err by denying appellants the opportunity to assure the jury that judgment against Service Cartage would be collected.

### Cross–Appeal by Norfolk and Western

In its cross appeal, Norfolk and Western argues that the trial court erred in failing to dismiss Ben and Linda Lear's claims against it because their petition failed to state a claim.[1] Norfolk and Western seems to be arguing that since Ben Lear was an employee of an independent contractor he had no claim against the railroad.

While it is true, as Norfolk and Western asserts, that one who contracts with an independent contractor to perform work is generally not liable for bodily injury by the independent contractor or one of its employees, *Barbera v. Brod–Dugan Co.,* 770 S.W.2d 318, 322 (Mo.App.1989), the Lears did not allege liability against Norfolk and Western based on the actions of an independent contractor or the employees of an independent contractor. The Lears' petition alleged that Norfolk and Western was negligent because of the activities of Norfolk and Western. A landowner does owe a duty to business invitees, once their presence is known, to exercise reasonable care as to the activities of the landowner on the premises. *Scheibel v. Hillis,* 531 S.W.2d 285, 288 (Mo. banc 1976).

The Lears claimed that Norfolk and Western requested that Ben Lear make a bid on the trailer repair, while the trailer

---

1. Although this issue was not raised in a motion for new trial, Rule 78.07 allows that a question as to the sufficiency of the pleadings need not be included in a motion for new trial.

was parked next to the office with the engine of the attached tractor running as the driver computed necessary paperwork. The Lears claimed that Norfolk and Western knew that Ben Lear was in a position of danger when Norfolk and Western instructed the Service Cartage driver to move the trailer to the location that Norfolk and Western directed. The Lears alleged in part that Norfolk and Western was negligent in one or more of the following respects:

A. In failing to warn Ben Lear when the Service Cartage driver was to begin or began to start up the truck.

B. In failing to notify the Service Cartage driver that Ben Lear was inspecting the trailer, or on top of the trailer, or in the vicinity of the trailer.

The petition alleged that the activities of Norfolk and Western were negligent and caused injury to Ben Lear. The petition did not fail to state a claim. Norfolk and Western's cross appeal is denied.

The judgment of the trial court is affirmed.

All concur.