Bruce **WILLIAMS** and Carlene Williams, Plaintiffs–Respondents,

v.

The **JUNIOR COLLEGE DISTRICT OF CENTRAL SOUTHWEST MISSOURI,** Defendant–Appellant.

No. 19815.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 22, 1995.

David C. Knieriem, Springfield, for appellant.

Robert Bruer, Jeffrey Bates, Bruer, Wooddell & Bates, Springfield, for respondents.

PREWITT, Presiding Judge.

Plaintiff Bruce Williams slipped and fell during a class conducted by Defendant on its premises. A jury found for Plaintiffs, assessing eighty percent of the fault to Defendant, and twenty percent to Bruce Williams. The jury determined that Bruce Williams' dam-

ages were $87,000, and Carlene Williams, his mother, was damaged the amount of his medical expenses, $14,751. Judgment was entered reducing these amounts by twenty percent, for a net judgment of $81,400.80. Defendant appeals.[1]

Two of Defendant's points relate to the trial court not granting a directed verdict and submitting Plaintiffs' tendered instructions on alternate theories of recovery. One of the points pertains to the refusal of identical instructions countering those theories. The remaining two points claim that Plaintiffs improperly introduced evidence. The points are discussed in the order presented.

■ In considering if a submissible case was made, the evidence, together with reasonable inferences therefrom, are considered in the light most favorable to Plaintiffs. *Harris v. F.W. Woolworth Co.*, 824 S.W.2d 31, 32 (Mo.App.1991). Defendant's evidence is disregarded except as it may aid plaintiffs. *Id.* Plaintiff may prove essential facts by circumstantial evidence. *Id.* "Some circumstantial evidence is very strong, as when you find a trout in the milk." Henry David Thoreau, *Journal,* November 11, 1854.

■ Defendant contends that the theory that it was negligent because fluid was on the floor which Defendant should have discovered and corrected, should not have been submitted to the jury, as there was no evidence that "notice, either actual or constructive, was given to Defendants of the foreign substance". Defendant's Point One is set forth in full below.[2]

Plaintiff Bruce Williams was taking an auto mechanics class given by Defendant. He was a sixteen-year-old junior student at Hillcrest High School. He attended morning classes at Hillcrest, and an auto mechanic class at Defendant from 12:30 to 2:50 p.m. The auto mechanic shop's facility where his class was held was known as the "junior

---

1. Charles Williams, Bruce's father, was originally a plaintiff, but died before trial.

2. The trial court erred in not granting a directed verdict at the close of all evidence in favor of defendant, or alternatively, submitting jury instruction number 7 to the jury, because jury instruction number 7, which was patterned on

MAI 31.16 and posited negligence based on a foreign substance on the floor, failed to state a cause of action in this case as a matter of law in that no notice, either actual or constructive, was given to defendants of the foreign substance, which is necessary to find the defendant owes any duty to the plaintiff.

shop". The floor of the shop was concrete which had been waxed. A morning class was conducted in that area and the evidence was undisputed that in working on automobiles various fluids, often with a petroleum base, would end up on the floor. After the morning class, the instructor would often have the students clean the floor and would inspect it before the afternoon class convened. The shop was to be closed and locked between classes. Plaintiff fell in the first twenty minutes of the class period. There was evidence that, in the area where Plaintiff fell, no one else had been working during his class.

There was sufficient evidence to find that a foreign substance existed on the floor and none of Defendant's points assert otherwise. If the substance was not put on the floor during the class Bruce Williams attended, then it must have been there previously. If no one was in the shop since the previous class, the substance must have been on the floor when that class ended. If so, and the class instructor inspected the floor, as he said he did, then the jury could have found that his inspection was deficient in not discovering the substance, and that had he discovered the substance, he could have easily remedied the condition.

■ There is notice to the defendant if it knew, or by the exercise of reasonable care, would have discovered the substance and realized that it involved an unreasonable risk to people on the premises. *Eide v. Midstate Oil Co.*, 895 S.W.2d 35, 39 (Mo.App.1995). On a floor such as the shop's, where petroleum products can be expected, due to the nature of the class involved, the jury could have found that a careful inspection should have been made, and if there was such an inspection, it was deficient.

■ Where an employee whose duty it is to look for foreign objects on the floor fails to discover one, there is constructive notice of the condition. *Alvey v. Sears, Roebuck & Co.*, 360 S.W.2d 231, 235–236 (Mo.1962). *See also Burns v. Schnuck Mkts., Inc.*, 719 S.W.2d 499, 501 (Mo.App.1986) (concerning a

defective grocery cart negligently overlooked in an inspection procedure). Point I is denied.

■ Defendant's second point also contends that a directed verdict should have been granted in its favor and a submission instruction not given. The instruction told the jury they should assess a percentage of fault to Defendant if there was negligence which caused damage to Plaintiff due to the shop floor being "sealed and waxed to a glossy finish without the application of any material or process to make it skid resistant".

Appellant states there was failure to make a submissible case on this issue because (1) "failure to put down a non-skid surface on a floor cannot, by itself, impose liability"; (2) "that there was not a non-skid surface on the floor was open and obvious as a matter of law"; or (3) "there was no proximate cause established between the failure to put down a non-skid surface and the damages claimed".[3]

Appellant cites *Noel v. Buchholz*, 411 S.W.2d 155, 158 (Mo.1967) for its statement "the mere waxing and polishing of an asphalt tile floor in good condition so that it is glossy and slick is [not] negligence." Defendant ignores the portions of the opinion noting that such a floor is not negligence "in an area which is well lighted and not in any way hidden or concealed" and there "were no foreign objects on the floor and no showing that the waxed surface was any different than at any other times." *Noel*, 411 S.W.2d at 158. The premises there in question was a "social hall", where a dinner was held. Here, we have an auto shop where petroleum products and other spills can be expected, and there was evidence of foreign objects on the floor. *Noel* does not require a ruling for Defendant on this issue.

There was evidence of the use of wax on Defendant's shop floor here. The manufacturer's directions suggested it should not be used on concrete, and the floor was very slick when wet. There was also evidence that various skid-resistant type paints were avail-

---

**3.** Defendant refers to the instruction as submitting failure to have a "non-skid" surface. The   instruction referred to a "skid resistant" surface.

able and used on automobile shops in the area. Students had previously fallen on the floor due to the slippery condition when it was being washed and at other times. The jury could have found that failure to have a skid-resistant surface on a floor used to train high school students in the field of auto mechanics was negligent. *Cf. Schneider v. Union Elec. Co.,* 805 S.W.2d 222, 227 (Mo. App.1991) (explaining that failure to put "nonskid surface" on rungs of ladder may be negligence). *See also State ex rel. F.W. Woolworth Co. v. Bland,* 208 S.W.2d 263, 264 (Mo. banc 1948) (referring to "antislip preparation" not applied or done negligently).

■ Whether a floor is skid resistant or not may not necessarily be open and obvious, but even if so, the evidence indicated that the presence of a foreign substance was not apparent. It is only "where the danger is open and obvious as a matter of law and the risk of harm exists only if plaintiff fails to exercise due care" that the case is not submissible to the jury in this situation. *Harris v. Niehaus,* 857 S.W.2d 222, 227 (Mo. banc 1993); *Smoot v. Vanderford,* 895 S.W.2d 233, 241 (Mo.App.1995). Where the danger is not open and obvious as a matter of law, it is for the jury to determine the plaintiff's comparative negligence rather than determining the duty of the owner. *Cox v. J.C. Penney Co., Inc.,* 741 S.W.2d 28, 29–30 (Mo. banc 1987); *Eide v. Midstate Oil Co.,* 895 S.W.2d 35, 39 (Mo.App.1995); *Luthy v. Denny's Inc.,* 782 S.W.2d 661, 664 (Mo.App.1989).

Whether the failure to provide a skid-resistant surface could have been the proximate cause of Bruce Williams' fall was for the jury. Proximate cause may be shown by circumstantial evidence. Based upon the evidence, the jury could have found that Plaintiff would not have fallen had a skid-resistant surface existed. *See Georgescu v. K–Mart Corp.,* 813 S.W.2d 298, 300–301 (Mo. banc 1991) and the cases therein cited and discussed. *See also Roberts v. Menorah Medical Ctr.,* 777 S.W.2d 330, 333 (Mo.App.1989). Point II is denied.

Defendant asserts through its third point that the trial court erred in refusing instructions it tendered, stating that the jury must render a verdict for Defendant if they believed that the condition of the floor was open and obvious. As discussed in the previous point, under *Harris,* where the danger is open and obvious as a matter of law, the case should not be submitted to the jury. *Harris,* 857 S.W.2d at 227. However, where the danger is not, then a plaintiff's knowledge, or knowledge that the plaintiff should have, is considered in determining comparative negligence. *Eide,* 895 S.W.2d at 39. The trial court properly refused these instructions as the danger here was not so obvious as to require a directed verdict, but was for the jury's consideration as to comparative fault. *Cf. Privitera v. Coastal Mart, Inc.,* No. WD49920, —— S.W.2d —— [1995 WL 507437] (Mo.App.W.D. August 29, 1995). Point III is denied.

■ Defendant's fourth point asserts that the trial court erred in allowing evidence introduced by Plaintiff regarding the possibility of petroleum products being on the floor. The trial court is granted broad discretion in the admissibility of evidence, and evidentiary rulings will not be disturbed on appeal absent an abuse of discretion. *Oldaker v. Peters,* 817 S.W.2d 245, 250 (Mo. banc 1991).

The possibility of foreign substances being on the floor could be relevant regarding the likelihood and frequency of substances on the floor and the necessity of and the proper extent of the inspection of the floor following classes. This evidence could explain where the substance came from which may have caused Plaintiff Bruce Williams to fall. It also related to the desirability of having a non-skid surface. Point IV is denied.

■ Defendant's remaining point states that the trial court erred in allowing evidence "by Plaintiff concerning Carlene Williams' feelings about bringing a lawsuit." Plaintiffs counter that the evidence complained about was admitted without objection. Plaintiff also claims that the evidence was relevant to rebut an inference of Defendant created during voir dire, that people who slip and fall do not usually bring lawsuits.

Defendant claims that the statements made by Plaintiff Carlene Williams as to why the lawsuit was brought "was irrelevant and introduced solely to flame the passion and prejudice of the jury' in that a plaintiff's

reluctance in filing a lawsuit is a type of character evidence that is improper in a civil lawsuit."[4]

The record of the voir dire does not support Plaintiffs' contention, it only shows that the following occurred during Defendant's questioning of the panel:

How many people here have slipped at some time in their life?

How many people at some time in their life have gotten hurt because they slipped?

How many of you all have sued somebody because you got hurt when you slipped?

Plaintiffs contend that when the first question was asked Defendant's counsel raised his hand, that he kept his hand raised during the second question, and dropped it when the third question was asked, as did all of the jurors who had previously raised their hands. However, that is not clear from the record and no objection was made to any of these questions.

During direct examination of Plaintiff Carlene Williams, the transcript reveals the following:

Q. [Mr. Bruer] And one—have you ever, one time, anytime besides this time, ever filed a claim for an injury or filed a lawsuit?

A. [Carlene Williams] No, I have not.

Q. How do you feel about this lawsuit?

A. I really hate it. I didn't want—you know, I didn't want—you know, I really hated it.

Q. Why? Why did you do it?

MR. KNIERIEM: Your Honor, at this point I'm not sure this is really relevant to anything.

MR. BRUER: He opened it up in voir dire with his who's done what, who's done what, and I think she's entitled to—I think the jury is entitled to understand she has—would prefer not to be here, Your Honor, and that she is not a person who sues.

MR. KNIERIEM: Well, Your Honor, she has not brought a lawsuit. Bruce is named in the lawsuit. Bruce has brought it. And furthermore, I don't see how voir dire can open anything up.

THE COURT: Overruled.

Q. How do you feel about Bruce's injury and what happened to him?

A. I was really upset and aggravated and his father was really, really aggravated when, you know, he got home and seen how bad he was hurt and they let him bleed over a trash can that day for so long. And then, you know, to see the pain that he was really in after—after it happened, like that night and he was in so much pain and he gets so frustrated, you know, with things that he couldn't do and get so aggravated that, you know, with all the things that had occurred and happened to him, we just felt like it wasn't fair.

Q. Has he ever talked about having his finger removed?

A. Yes.

Q. What's he said?

A. Sometimes he gets so real mad and said that he wants to cut it off, and I won't let him.

Whether or not the evidence complained of was properly objected to, see *Brown v. St. Mary's Health Ctr.*, 713 S.W.2d 15, 18 (Mo.App.1986); *State ex rel. Highway Comm'n. v. Heim*, 483 S.W.2d 410, 412–413 (Mo.App. 1972); *Allen v. Gibbons*, 425 S.W.2d 243, 247 (Mo.App.1968); need not be decided. The testimony complained of was at least in part cumulative and was not so prejudicial as to require a new trial. This Court does not "reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action." Rule 84.13(b). Error in admitting evidence is not grounds for reversal if it does not prejudice the complaining party or adversely affect the jury in reaching its verdict. *Graves v. Atchison—*

---

**4.** Is Defendant suggesting that reluctance in filing a lawsuit, which the jury obviously found was justified, is a good character trait?

*Holt Elec. Coop.*, 886 S.W.2d 1, 3 (Mo.App. 1994). Point V is denied.

The judgment is affirmed.

CROW and PARRISH, JJ., concur.