**Dale S. HUTSON and Gloria Hutson, Plaintiffs–Respondents,**

v.

**BOT INVESTMENT CO., INC., and Wal–Mart Stores East, Inc., Defendants–Appellants.**

**Nos. 22570, 22594.**

Missouri Court of Appeals, Southern District, Division One.

Sept. 29, 1999.

Motion for Rehearing and Transfer Denied Oct. 21, 1999.

Application for Transfer Denied Nov. 23, 1999.

Stefan J. Glynias, Adrian P. Sulser, Dean L. Stark, Todd L. Beekley, Evans & Dixon, St. Louis, for appellants Wal–Mart.

Thomas H. Hearne and Michael T. Pivac, Hearne & Pivac, Springfield, for Appellant BOT.

Lawrence E. Ray and John M. Farris, St. Robert, for Respondents.

KENNETH W. SHRUM, Judge.

This is a premises liability case in which Plaintiff, an invitee, fell on Defendants' property.[1] A jury awarded Plaintiff damages for his injuries but also assessed him with some fault. Defendants appeal.

The issues on appeal are (1) whether the trial court gave a prejudicially erroneous comparative fault instruction, (2) whether it prejudicially erred in rejecting a comparative fault instruction tendered by Defendants, (3) whether Plaintiff failed to make a submissible case against one of the

---

**1.** By the term "Plaintiff" we refer to Dale S. Hutson. His wife, Gloria Hutson, was also a party-plaintiff but the jury found she did not sustain damages. She did not appeal.

Defendants, and (4) whether the judgment fails to conform to the verdicts. We answer, "No," to the first three questions and, "Yes," to the fourth.

We affirm in part; we reverse and remand in part.

## FACTS

BOT Investment Company (BOT), a real estate development firm, built a retail store in Salem, Missouri, and then leased it to Wal–Mart Stores East, Inc. (Wal–Mart).[2] The leased premises included a building, paved parking lot, and an adjacent "grassy area" where, on November 25, 1988, Plaintiff fell.

The day after Thanksgiving, Plaintiff went shopping at Wal–Mart's Salem store with his children (Andrew, age nine, and Andrea, age two). Plaintiff parked his car on Wal–Mart's parking lot near the edge of the lot so that the passenger side of Plaintiff's car was within four or five inches of the curb. Consequently, anyone entering or exiting the vehicle on the passenger side had to step into an adjacent unpaved area. Plaintiff testified that this adjacent unimproved land contained a lot of "grassy areas and ... weeds" and that there were "different types of debris scattered ... around that area."

When Plaintiff and his children returned to their car after shopping, Plaintiff placed their purchases in the back seat of the car via the driver's-side rear door. Plaintiff then walked around the car to the curb with Andrea, intending to place Andrea in the car on the passenger's side. As Plaintiff approached the curb, he looked down "to see if there was any obstructions or anything in the way." He then picked up Andrea, glanced "down for a brief second," and stepped over the curb with his right foot. When Plaintiff transferred his weight to his right foot in the grass, something moved under his foot and caused him to fall. Except for his right foot—which was prevented from rotating freely by the

curb—Plaintiff's body was partially turned when he fell. As he fell, Plaintiff felt a long rip and tear in his right ankle, and he immediately experienced great pain.

Afterward, as Plaintiff lay on the ground trying to figure out what had happened, he observed "an old ... 16–ounce Pepsi bottle" nearby. He explained that the bottle appeared to have been imbedded in the ground "a half inch to an inch deep" and hidden under grass where he could not see it. Plaintiff concluded he had "kicked it ... from underneath the grass" as he "came off of the curb."

At trial, the trial court refused to submit Defendants' Instruction E. It read:

"In your verdict you must assess a percentage of fault to Plaintiff if you believe:

"First, Plaintiff knew or by using ordinary care could have known that there was *trash and debris in the area* next to the parking lot and as a result this area was not reasonably safe, and

"Second, Plaintiff failed to use ordinary care to keep a careful lookout, and

"Third, such failure directly caused or directly contributed to cause any damage [P]laintiff may have sustained."

(Emphasis added.)

In refusing the instruction, the trial court stated, "I believe it is overly broad in [the first] paragraph." The court told Defendants that if they wanted to submit a comparative fault instruction, they should remove the phrase "trash and debris in the area" and "submit some limited language to the facts contained in this case." Ultimately, over Defendants' objection, the court submitted the following instruction to the jury as Instruction No. 9:

"In your verdict you must assess a percentage of fault to Dale Hutson if you believe:

"First, Plaintiff knew or by using ordinary care could have known that there was a *soda bottle in the grass* and as a

---

2. When we refer to Wal–Mart and BOT collectively, we call them "Defendants."

result the land was not reasonably safe, and

"Second, Plaintiff failed to use ordinary care to keep a careful lookout, and

"Third, such failure directly caused or directly contributed to cause any damage Plaintiff ... may have sustained."

(Emphasis added.)

The jury returned a verdict for Plaintiff, set his damages at $100,000, and assessed him with twenty percent of the fault. The jury found that Plaintiff's wife did not suffer damages as a result of Plaintiff's injury. Defendants appeal from the judgment entered on the verdicts.

## DISCUSSION AND DECISION

*Point I: Alleged Error Regarding Comparative Fault Instruction*

Wal–Mart's first point maintains that the comparative fault instruction submitted by the court prejudicially misdirected the jury as it did not "accurately reflect the nature of the allegedly defective condition of the property and did not reflect the evidence adduced in the case." In developing its point, Wal–Mart points out that Plaintiff testified, without contradiction, that (1) on previous visits to the Salem Wal–Mart, Plaintiff had observed and knew that the grassy area next to the parking lot was frequently littered with trash and debris; and (2) on the day of this accident, Plaintiff had observed trash and debris in this area.[3] Wal–Mart argues, therefore, that the trial court should have given an instruction concerning this general condition, i.e., Instruction E, which hypothesized "trash and debris," and that the court erred when it gave Instruction No. 9, which "focused the jury's attention on the particular item of trash that allegedly caused Plaintiff's injury."

Wal–Mart complains that Instruction No. 9(1) "inherently misled the jury" as it "circumscribed the jury's consideration and assessment of liability and comparative fault;" (2) "unfairly limited the jury's consideration to Plaintiff's unreasonable conduct in traversing an area that he knew to be unkempt and littered;" (3) "lessened [Plaintiff's] evidentiary burden and increased [Wal–Mart's] burden as to notice and knowledge;" (4) "improperly shifted the issue of notice away from Plaintiff's awareness of the hillside as a trash and debris strewn area to whether [Plaintiff] knew that a specific soda bottle lay hidden in the grass;" (5) "precluded an examination of the general reasonableness of Plaintiff's conduct;" and (6) "made it more difficult for a jury to find that Plaintiff acted unreasonably."

BOT's first point is similar to that of Wal–Mart. BOT complains that the "trial court erred in refusing ... Instruction E ... and ... [in submitting] Instruction 9, [because] the instruction submitted by the Court did not allow ... BOT to place the issue of Plaintiff's notice of the general condition of the property prior to the incident before the jury."

 In a premises liability case, whether an invitee exercised ordinary care is to be considered by a fact-finder when allocating fault under Missouri comparative fault principles. *Cox v. J.C. Penney Co., Inc.,* 741 S.W.2d 28, 30 (Mo.banc 1987). *See* MAI 32.28 [1995 Revision]. Also, an owner or possessor is entitled to have a fact-finder consider evidence of an invitee's knowledge of the general condition of the premises where such knowledge is relevant in deciding whether invitee exercised ordinary care. *See Kramer v. Chase Resorts Inc.,* 777 S.W.2d 647 (Mo. App.1989); MAI 32.28 [1995 Revision].

3. On cross-examination, Plaintiff testified he had shopped at the Salem Wal–Mart many times since it first opened approximately eighteen years before this accident. He estimated he had parked along the same curb "about 100 times in the past." On those previous trips to Wal–Mart, he had observed trash and debris on the adjacent "hill" area. Consequently, on the day of the accident, Plaintiff knew before he "stepped over the curb that there was trash and debris in that area."

It is also well settled that a defendant in a premises liability case, as in any tort case, is entitled to have his or her defenses and theories of the case submitted to the jury by proper instructions. *Anderson v. Welty*, 334 S.W.2d 132, 139[14] (Mo.App.1960). Stated another way, a defendant has the right to an affirmative submission of his or her own theory of the facts in evidence that, if true, would preclude or reduce the plaintiff's recovery and absolve the defendant of liability or reduce his or her obligation to the plaintiff. *Id.* at 139[15].

A proper instruction is one that is " 'within the pleadings and evidence and [is] correct in both form and substance.' " *Allison v. Sverdrup & Parcel & Assoc., Inc.*, 738 S.W.2d 440, 454 (Mo.App.1987) (quoting *Orloff v. Fondaw*, 315 S.W.2d 430, 433 (Mo.App.1958)). Refusal to give a comparative fault instruction that is supported by the evidence is error. *Naes v. Reinhold Dev. Co.*, 950 S.W.2d 681, 683 (Mo.App.1997).

Under these standards and the facts of this case, we find that the trial court's refusal to submit Defendants' instruction and its submission of Instruction No. 9 was erroneous. This follows because Instruction E tendered by Defendants was "within the pleadings and evidence and was correct in both form and substance." *See Allison*, 738 S.W.2d at 454. Consequently, the trial court erred in refusing it and submitting Instruction No. 9. *See Naes*, 950 S.W.2d at 683.

We are not persuaded, however, that the instructional errors prejudiced Defendants. Reversal for comparative fault instructional errors is warranted only where the errors are of such a nature that there is substantial potential for prejudicial effect. *Lear v. Norfolk and Western Ry. Co.*, 815 S.W.2d 12, 15[4] (Mo.App. 1991). Alleged instructional errors regarding comparative fault issues are not grounds for reversal when the facts show the instruction could not have prejudiced the party appealing. *Id.* "The prejudicial effect of an erroneous instruction must be judicially determined." *Id.* at 15[5]. These principles recognize that "retrials are burdensome" and "[t]here has been in recent years a trend away from reversal for error in instruction, unless there is a substantial indication of prejudice." *Fowler v. Park Corp.*, 673 S.W.2d 749, 757 (Mo.banc 1984).

Here, Defendants claim they were prejudiced because Instruction No. 9 misled or confused the jury. Resolution of the basic question of whether jury instructions are confusing or misleading is, in the first instance, addressed to the trial court's discretion. *Dunkin v. Reagon*, 710 S.W.2d 498, 501[8] (Mo.App.1986). This rule attends because the trial court has the best opportunity to decide whether an instruction is misleading or confusing and, on review, its rulings thereon will not be disturbed absent a showing of an abuse of discretion. *Affiliated Foods, Inc. v. Strautman*, 656 S.W.2d 753, 758[2] (Mo. App.1983). Also, when deciding whether there has been an abuse of discretion, the reviewing court "is permitted to believe that the jury was composed of reasonably intelligent people who possess common sense and an average understanding of the English language." *Id.* at 758–59[3]. In this appeal, Defendants have presented us with the same complaints of prejudicial instructional error as they presented to the trial court via their motions for new trial. The trial court rejected those claims and we find no abuse of discretion in its decision.

Plaintiff conceded not only that he had prior knowledge of the general condition of Defendants' premises, which could have indicated that the property might not be reasonably safe, but also that he observed "old bottles" in the grassy area where he intended to walk and that he understood the danger they posed. These were concessions of evidentiary facts that bore upon the ultimate fact of whether Plaintiff was negligent in his conduct. In closing

argument, defense counsel ignored the narrow hypothesis of Instruction No. 9 and argued, instead, that the jury should assess fault to Plaintiff because he entered an area that he knew to be in a "dangerous condition." Among other things, Wal–Mart's lawyer argued:

"[Y]ou've heard Plaintiff. He said he didn't know if anybody every [sic] cleaned up there. It looked bad to him all the time. He wasn't relying on Wal–Mart to clean it up. . . . He didn't even know who owned the property, yet he wants to hold us responsible for an area that wasn't designated parking, and that he knew was in a dangerous condition. He knew there was trash there. He even testified he'd seen bottles there before, yet, he wants to hold us responsible.

. . . .

"So in conclusion, I would just like to say I don't think there's any liability on Wal–Mart, based upon the fact that we didn't control the property. . . . But if you disagree . . . then you have to remember [Plaintiff] is partly at fault. He's admitted he knew the condition."

■ *Fowler,* 673 S.W.2d at 756[13], teaches that it is proper to look to the parties' closing arguments to determine whether an erroneous instruction had a prejudicial effect. Here, defense counsel freely argued their theory of the case to the jury and outlined the evidence that supported it, i.e., that Plaintiff knew of the general dangerous condition, failed to keep a careful lookout, and should be assessed fault. Substantial evidence supported Defendants' argument that Plaintiff knew of the general dangerous conditions. Such evidence consisted primarily of Plaintiff's

testimony during direct examination and exhaustive cross-examination. We are persuaded that this jury assessed Plaintiff's fault at twenty percent based on that evidence and defense counsel's closing argument and not on the narrow hypothesis of Instruction No. 9. Otherwise, we would have to presume the jury assessed twenty percent of the fault to Plaintiff for failing to discover the hidden bottle by parting the grass, touching the ground, or making some other hands-on investigation before he stepped across the curb. We simply are not persuaded that a jury composed of reasonably intelligent people who possessed common sense would have attributed twenty percent of the fault to Plaintiff based on that narrow hypothesis.

We believe the issue before the jury regarding his fault was single, clear, and simple: Did Plaintiff fail to use ordinary care to keep a careful lookout when he stepped onto a grassy area littered with trash and debris? It was an issue clearly presented by the evidence and the arguments and one about which the jury could not have been misled or confused by using paragraph first in Instruction No. 9 rather than paragraph first in Instruction E. In the total context of this case, we find no prejudice from the instructional errors. Point I is denied.

## Wal–Mart's Point II: Failure to Make a Submissible Case

■ In its second point, Wal–Mart contends that the trial court erred in denying its motion for new trial because Plaintiff failed to make a submissible case of premises liability.[4] Wal–Mart insists that Plaintiff failed in this regard because he presented no evidence from which the jury could have found Wal–Mart knew or had

---

4. If taken literally, Wal–Mart's claim that the trial court erred when it overruled its motion for new trial does not present an issue for review. *See Copeland v. Compton,* 914 S.W.2d 378, 380 (Mo.App.1996). "[D]enial of a motion for new trial is not an appealable order; but appeal must be taken from the judgment to which the motion was directed." *Hitt v. Martin,* 872 S.W.2d 121, 122[1] (Mo.

App.1994). Even so, from the argument portion of Wal–Mart's brief, we discern that Wal–Mart merely inartfully worded this point relied on, and is, in fact, appealing from the trial court's judgment. We presume, therefore, that Wal–Mart is challenging the sufficiency of the evidence supporting the jury's verdict. *See Copeland,* 914 S.W.2d at 380.

reason to know that there were half-buried soda bottles in the area adjacent to the parking lot.

■■■■■ In order to make a submissible case, Plaintiff had to show that Wal–Mart knew, or by using ordinary care could have known, of the dangerous condition and failed to use ordinary care to remove it, barricade it, or warn of it, and that, as a direct result of such failure, plaintiff sustained damage. *See* MAI 22.03 [1995 Revision]. In determining whether Plaintiff made a submissible case, we consider the evidence in the light most favorable to Plaintiff, giving him the benefit of all reasonable inferences. *Emery v. Wal–Mart Stores, Inc.,* 976 S.W.2d 439, 443[1] (Mo. banc 1998). A defendant's evidence is not considered except as it may aid the plaintiff. *Williams v. Junior College Dist.,* 906 S.W.2d 400, 401[1] (Mo.App.1995). "Plaintiff may prove essential facts by circumstantial evidence." *Id.* at 401.

Here, Plaintiff presented evidence that, before his accident, Wal–Mart managers told employees to "make a conscious effort to inspect the [grassy] area [next to the paved parking lot] from time to time." Managers further directed employees to inspect for "debris, bottles, paper, other types of rubbish" and to "have it picked up." This "procedure" was established "to make sure that this area on the parking lot and adjacent to the parking lot are free from that trash and debris." As to the frequency of the inspections, Dennis Tidwell, manager of the Salem Wal–Mart, testified as follows:

"A. [By Dennis Tidwell] I'm trying to run through the question. Would— Would [it] be a prudent policy for Wal–Mart to have someone inspect the parking lot and the adjacent [area]?"

"Q. Yeah, to inspect."

"A. On a daily basis?"

"Q. And pick up trash found on the parking lot in the adjacent area on at least a daily basis?"

"A. Should be. Yes."

.

There was sufficient evidence to find that the object that caused Plaintiff to fall was an "old ... 16–ounce Pepsi bottle" with a "faded" label. There was also sufficient evidence to find that before Plaintiff unknowingly kicked or stepped on the bottle, it was imbedded in the ground to a depth of a half inch to an inch. None of Wal–Mart's points assert otherwise. From this uncontradicted evidence, it could reasonably be inferred that the bottle was at this site long enough to become "faded" by exposure to natural elements. Likewise, it could reasonably be inferred that the bottle had been in the grassy area long enough for it to have been imbedded in the ground by natural processes, i.e., gravity, weather and seasonal changes, and varying soil conditions, or to have been imbedded when someone either stepped on or ran over the bottle while the ground was soft. The jury was free to draw such inferences from the evidence. Further, the jury could have concluded that if Wal–Mart's employees conducted thorough inspections of the parking lot and surrounding areas as they were directed, then the inspections were deficient in that the employees failed to discover the bottle imbedded in the ground, and that had the employees discovered the bottle they could have easily remedied the condition. *See Williams,* 906 S.W.2d at 402[2].

■■■■ A defendant has reasonable notice of a dangerous condition if the defendant knew of, or by the exercise of reasonable care would have discovered, the condition and realized that it involved an unreasonable risk to people on the premises. *Id.* at 402[3]. Here, the evidence supports the inference that Plaintiff's fall was caused by debris of a nature that Wal–Mart knew was frequently discarded on its premises, i.e., a bottle. Consequently, the jury could have found that a careful inspection should have been made, and that if such an inspection was conducted in this case, it was deficient. *Id.* at 402.

Where an employee whose duty it is to look for foreign objects on his employer's premises fails to discover such an object, there is constructive notice of the condition. *Id.* at 402[4] (citing *Alvey v. Sears, Roebuck & Co.*, 360 S.W.2d 231, 235–36 (Mo.1962)). *See also Burns v. Schnuck Markets, Inc.*, 719 S.W.2d 499, 501 (Mo.App.1986) (concerning a defective grocery cart negligently overlooked in an inspection procedure).

On this record, the issue of whether Wal–Mart had actual or constructive notice of the bottle that caused Plaintiff to fall was for the jury to decide. Plaintiff made a submissible case and there was sufficient evidence to support the jury verdict. We reject Wal-mart's argument to the contrary. Wal–Mart's second point is denied.

*BOT's Point II: Judgment Not in Conformity With Verdicts*

In its second point, BOT points out that the trial court's judgment, in which the court awarded $100,000 to both Plaintiff and his wife, does not conform to the jury's verdicts. The jury found for Plaintiff, set his damages at $100,000, and assessed his fault at twenty percent, but the jury denied any recovery to Plaintiff's wife. Consequently, the judgment should have been for Plaintiff alone in the amount of $80,000.

Although BOT failed to preserve this claim of trial court error for our review— i.e., BOT neither presented the claim to the trial court in a motion to correct the judgment nor included it in its motion for new trial—the claim presents the type of plain error affecting substantial rights that this court may consider under Rule 84.13(c). To affirm this judgment as written would result in a manifest injustice and a miscarriage of justice. BOT's second point has merit. We remand to the trial court for entry of an amended judgment in accordance with the jury's verdicts and this opinion.

CROW, P.J., CONCURS.

PARRISH, J., CONCURS.